SIDNEY D. ADAMS v. W. J. HARTZELL AND SARGENT COUNTY. W. J. HARTZELL, DEFENDANT AND APPELLANT.

Opinion filed January 19, 1909.

**State Insolvency Law.**

1. St. Wis. 1898, chapter 80, with the acts amendatory thereof and supplemental thereto, which provide that, when a resident of that state has made an assignment of his property for the benefit of creditors, the proceedings thereunder shall be under the jurisdiction of the circuit court, and that the assignee may be removed, and the creditors may elect a successor, and for the discharge of the debts of the assignor, is a state bankruptcy or insolvency law.

**Insolvency — Assignment for Benefit of Creditors — Extra Territorial Effect.**

2. A deed of assignment for the benefit of creditors, executed in 1893 within the state of Wisconsin, in accordance with the provisions of St. Wis. 1898, chapter 80, and amendatory and supplemental acts of the Wisconsin statutes in force at that date, has no extra-territorial effect on real estate, and does not convey title to real estate situated in the state of North Dakota.

**Same — Power of Assignee — Conveyance of Realty in Another State.**

3. A deed of assignment for the benefit of creditors, made in accordance with, and under the provisions of, chapter 80 and supplemental and amendatory acts of the Revised Statutes of Wisconsin of 1898, contained a power authorizing the assignee named in such deed to do the acts and things necessary in the premises to the full execution of the trust created, and to execute, acknowledge, and deliver all necessary deeds, instruments and conveyances, and to sign the name of the assignor to such instruments whenever necessary to carry into effect the object, design, and purpose of the trust. *Held,* that such power of attorney gave the assignee no authority to execute deeds in the name of his principal to any real estate not conveyed by the deed of assignment; and hence a deed, executed by such assignee in the name of the assignor, and as attorney in fact for the assignor, to lands situated in the state of North Dakota not conveyed by the deed of assignment, does not operate to convey title.

**Quieting Title — Quitclaim Deed Carries Title Sufficient to Support Action.**

4. A deed granting, selling, remising and releasing to the grantee the premises described, although containing the word "quitclaim," conveys title on which an action to determine adverse claims to real property may be maintained.

**Trial — Stipulations — Conclusiveness and Effect.**

>    5.  The parties in this action entered into a stipulation in writing of the facts on which the case should be tried. It was agreed in such stipulation that the facts therein stated constituted all the facts in the action, and should be the evidence of the same and considered proven. A trial and arguments were had, and the case submitted, after which plaintiff submitted a motion for leave to take testimony on questions not covered by the stipulation. The motion was granted, and plaintnff only given leave to submit additional testimony. No fraud or deceit on the part of defendant was shown relative to the stipulation. *Held*, that entering an order solely to permit the plaintiff to take and submit additional evidence on questions of fact, not included in the stipulation, without giving defendant the right to rebut such evidence, or to submit evidence on the facts covered by the order, was error.

Appeal from District Court, Sargent county; *Allen,* J.

Action by Sidney D. Adams against W. J. Hartzell. Judgment for plaintiff, and defendant appeals.

Reversed with directions.

*Chas E. Wolfe, J. E. Bishop,* and *C. D. Austin,* for appellants.

Statutory assignment for benefit of creditors does not pass title to realty in another state. Security Trust Co. v. Dodd, 173 U. S. 624; Segnitz v. Trust Co., 83 N. W. 327; Wells v. Walsh, 57 N. W. 969; McClure v. Campbell, 37 N. W. 343; Hutchinson v. Peshine, 16 N. J. Eq. 170; Lessee of Roderick's Heirs, 2 Hammond, 380; Osborn v. Adams. 18 Pick, 247.

Nor passes title to land not inventoried. Bock v. Perkins, 139 U. S. 628; Price v. Haynes, 37 Mich. 487; Scott v. Colman, 5 Litt (Ky.) 349; Guerin v. Hunt, 6 Minn, 375; Rundlett v. Dole, 10 N. H. 458.

Court has no power to alter a stipulation of facts. Gerdtzen v. Cockrell, 50 Minn. 546; Bingham v. Winona Co. 6 Minn. 136; Keys v. Warner, 45 Cal. 60.

Where assignee in Federal bankruptcy fails to take over property as too much incumbered to have value as an asset, title remains in bankrupt. Bushane v. Ball, 161 U. S. 515; Bank v. Lasater, 115 U. S. 115; Reynolds v. Crawfordsville Bank, 112 U. S. 405; Paige v. Waring, 76 N. Y. 463.

*Rourke, Kvello & Adams* and *Shepart & Catherwood* for respondent.

An assignment for the benefit of creditors is voluntary and vests title in the assignee.  Segnitz v. Trust Co., 83 N. W. 327; Barth v. Backhus, 140 N. Y. 230, 35 N. E. 425, 37 A. S. R. 545; Townsend v. Coxe, 37 N. E. 689.

Assignment for benefit of creditors will be upheld in this state, except as to resident creditors and bona fide purchasers.  Thompson v. Ellenz, 59 N. W. 1023; Williams v. Kemper Co., 43 Pac. 1148; Cole & Cunningham 33 L. Ed. 547; Barnett v. Kinney 37 L. Ed. 249; Memphis Bank v. Honchues, 115 Fed. 96.

Admission of evidence after a stipulation of all facts is made between parties, is discretionary with the court. Second Nat'l Bank v. First Nat'l Bank, 8 N. D. 50, 76 N. W. 504; Turner v. St. John, 8 N. D. 245, 78 N. W. 340; Ward v. Clay, 23 Pac. 50; Meldrum v. Kenefick, 89 N. W. 863; Keens v. Robertson, 65 N. W. 897; Butler v. Chamberlain, 92 N. W. 154; Brown v. Cohn, 60 N. W. 826; 4 Current Law, 1555.

Quitclaim deed insufficient to support title in action to determine adverse claims.  Hamilton v. Beaudreau, 47 N. W. 952; Kerr v. Freeman, 33 Miss. 292; Orton v. Smith, 59 Sup. Ct. 266, 15 L. Ed. 393.

SPALDING, J.  This is an action to determine adverse claims to the N½ of section 2 in township 132 N. range 57 W., in Sargent county, N. D. Plaintiff had judgment in the district court, and the defendant, Hartzell, appeals, and asks a trial de novo.

Many questions are raised which depend largely on the determination of the main question.  The facts are as follows:  One Field, whom we infer to be a resident of Wisconsin, held a first mortgage on the land in question.  One F. T. Day, also a resident of Wisconsin, held a second mortgage thereon.  Both these mortgages were duly recorded.  Day became the owner of the fee to said premises on the 23rd day of July, 1890, through a sheriff's deed conveying the same to him under a foreclosure of his second mortgage.  June 3, 1893, Day made an assignment for the benefit of creditors to one Momsen, under the provisions of chapter 80 of the Revised Statutes of Wisconsin of 1898, and the acts amendatory thereof and supplemental thereto.  Momsen on the same day consented to act as such assignee, and a certified copy of the original deed of assignment was filed and entered in the office of the clerk of the circuit

court of Milwaukee county, Wis., as required by the laws of Wisconsin. A certified copy of such certified copy of the deed of assignment was filed for record in the office of the register of deeds of Sargent county, N. D. on the 21st day of June, 1898, and the original deed of assignment on the 25th day of April, 1906. A schedule of property was duly filed as required by law, but neither the deed of assignment, nor the schedule, included the land in controversy. April 20, 1895, Momsen, as assignee under license of the circuit court of Milwaukee county, executed, acknowledged, and delivered to Field, the holder of the first mortgage, a deed, which he also executed in the name of Day, as his attorney in fact. This deed was filed for record in the office of the register of deeds for Sargent county on the 20th day of June, 1898. The deed of assignment contains a provision reading as follows: "And, in furtherance of the premises, the said party of the first part does hereby make, constitute and appoint the said party of the second part, his true and lawful attorney, irrevocable, with full power and authority to do all acts and things which may be necessary in said premises, to the full execution of the trust hereby created, * * * and to execute, acknowledge and deliver all necessary deeds, instruments and conveyances, and the said party of the first part does hereby authorize said party of the second part to sign the name of said party of the first part * * * to all instruments in writing whenever it shall be necessary so to do to carry into effect the object, design and purpose of this trust." It is apparent that the deed to Field was signed in the name of Day by Momsen as his attorney in fact by reason of the provision above quoted. In May, 1902, Field deeded to one Lindsley, and in December, 1904, Lindsley deeded to Adams, the plaintiff and respondent herein. This latter deed was recorded April 7, 1905. This in brief is the chain of title on which respondent relies. Appellant relies for his title upon a quitclaim deed executed and delivered to him by Day May 5, 1903, and filed for record in the office of the register of deeds of Sargent county, N. D., May 9, 1903. At the date of the assignment the premises described were wholly uninclosed, and no buildings or other improvements were thereon. Momsen, neither as assignee or otherwise, ever took possession thereof, and no assignment, insolvency, or other similar proceedings, either original or ancillary to the Wisconsin assignment, were ever had or instituted in this state.

The Wisconsin statute referred to, under which such assignment was made, which was received in evidence, reads as follows:

"Chapter LXXX.—Of Voluntary Assignments.

"Supervision of. Sec. 1693. The circuit court or the judge thereof in vacation, shall have supervision of the proceedings in all voluntary assignments made under the provisions of this chapter, and may make all necessary orders for the execution of the same.

  *   *   *   *   *   *   *

"Inventory of Assignor's Assets. Sec. 1697. (As amended by chapter 251, Laws 1885; chapter 317, Laws 1887.) Within twenty days after the execution of the assignment, the assignor shall also make and file in the office of said clerk a correct inventory of his assets and a list of his creditors, stating the place of residence of each such creditor and the amount due to each, which inventory and list shall be verified by his oath, and have affixed a certificate of the assignee that the same is correct, according to his best knowledge and belief; but no mistake therein shall invalidate such assignment or affect the right of any creditor.

  *   *   *   *   *   *   *

"Removal of Assignee. Sec. 1702. (As amended by section 1, c. 548, Laws 1887.) The circuit judge may, upon notice and after a hearing, remove any assignee who is shown to be incompetent, or to have become disqualified, or to have wasted or misapplied any of the trust estate, and shall also remove any such assignee upon the application of a majority of the creditors of such assignor, who shall also represent a majority in value of the debts allowed against said estate, and compel by order a settlement of his account and surrender of the estate to his successor, and shall appoint the person named in such petition, or some suitable person as his successor, who shall qualify in the same manner provided by law for the assignee appointed by the instrument of assignment; and in place of any assignee who shall die or be removed may appoint another, who shall give the bond and be subject to like duties and responsibilities as to the estate remaining undisposed of, and proceedings remaining to be taken, as if appointed by the instrument of assignment.

  *   *   *   *   *   *   *

"Who may be Discharged. Sec. 1702d. (Section 1, c. 385, Laws 1889.) Any person who shall have made a voluntary assignment for the benefit of his creditors under or in pursuance of the laws

—15—

of this state, may be discharged from his debts as a part of the proceedings under such assignment upon compliance with the provisions of this act."

In addition to this such statute contains other provisions relating to the discharge of the assignor.

The principal question in this case is, Did the assignment referred to transfer the title of Day to the land in question? The authorities as to the effect of voluntary assignments for the benefit of creditors upon the title of real estate situated outside the jurisdiction in which the assignor resides and makes his assgnment may be said to be not altogether harmonious; many of them holding that such an assignment conveys the real estate wherever situated, while others qualify this in favor of creditors who are not residents of the state where the assignor resides, and where the assignment is made. As to the effect of involuntary assignments, or what may be termed "state bankruptcy or insolvency laws," on real property in other jurisdictions, there is practically no conflict of authorities. It, therefore becomes necessary to decide whether the assignment of Day, as controlled by the statutes of Wisconsin, is a voluntary or an involuntary assignment, and what its effect was upon the land involved in this action. The general principle seems to be that where the assignment is made in accordance with the provisions of a statute which is, in effect, a bankruptcy or insolvency statute, and under the terms of which the assignor may be discharged from his indebtedness, although the act of assignment itself may have been voluntary on the part of the assignor, yet in the contemplation of the law it is an involuntary assignment, and the proceeding is one in bankruptcy or insolvency. This rule rests upon the well-established principles that the title and disposition of real property are exclusively subject to the laws of the state where it is situated, and that such state alone can prescribe the mode by which the title can pass; that the laws of one state will not be permitted to control the trust, the action of the trustee, or the disposition of the trust property in another state, the subject of the trust being real property —as well as the general principle that the statutes of a state can operate only within the state which enacts them. We cannot attempt to cite all the authorities supporting this but give a few only. See Security Trust Co. v. Dodd, 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835; Townend v. Coxe, 151 Ill. 62, 37 N. E. 689; Rhawn v. Pearce, 110 Ill. 350, 51 Am. Rep. 691;

Franzen v. Hutchinson et. al,. 94 Iowa, 95, 62 N. W. 698; Weider v. Maddox, 66 Tex. 372, 1 S. W. 168, 59 Am. Rep. 617; Barth v. Backus, 140 N. Y. 230, 35 N. E. 425, 23 L. R. A. 47, 37 Am. St. Rep. 545; Walters et al. v. Whittock, 9 Fla. 86, 76 Am. Dec. 607; note, 78 Am. Dec. 594; note, 65 L. R. A. 353.

As to the construction to be placed upon the statute of Wisconsin, we are not left in doubt, because, aside from its having been construed by the courts of other states, the Supreme Court of Wisconsin has settled its meaning and effect in this particular, and we shall not take it upon ourselves to over-rule the construction which that court places upon a law of its own state.

We may say, in passing, that respondent contends (not very strenuously, however) that, irrespective of the fact that the deed from Momsen to Field was executed by Momsen as assignee, the fact that he also executed it in the name of Day, as his attorney in fact, conveyed title. There is no merit in this contention. Our quotations from the deed of assignment indicate with perfect clearness that Momsen was constituted Day's attorney in fact to empower him to execute deeds of conveyance simply and only for the purpose of carrying into effect the terms of the deed of assignment, and that Momsen's authority and power as attorney in fact for Day are limited to carrying out the provisions of the assignment, and that they do not extend to the execution as attorney for Day of deeds of property not included within the assignment. Hence, if the land in controversy was not conveyed by the assignment, Momsen was not authorized to execute a deed thereto by force of the power contained in the instrument. If authorities are needed to sustain this point, which we think they are not, Osborne v. Adams, 18 Pick. (Mass.) 245, is in point. A statutory assignment had been made in Connecticut, for the benefit of the assignor's creditors. On the same day, and in connection with the assignment, the assignor, Powell, by deed executed in Connecticut, conveyed to the same party who was made the assignee in the deed of assignment land situated in Massachusetts. The latter deed referred to the general assignment as to the purposes of the conveyance. The Massachusetts court held the statutory deed of assignment to be void as to lands in Massachusetts, and that it could neither pass title or aid one otherwise defective, and that the last-named deed was ancillary to the assignment proceedings, and that it could no more take notice of a trust created under a foreign government than it could of a will not proven or recorded in Massachusetts.

Several Wisconsin cases might be cited construing the above statute, but we deem it only necessary to refer to Segnitz v. Garden City Banking & Trust Co., 107 Wis. 171, 83 N. W. 327, 50 L. R. A. 327, 81 Am. St. Rep. 830. This case involved an assignment executed in conformity with the statute of Wisconsin quoted above, and the title to personal property of the assignor situated in the state of Illinois; but, for the purpose of determining the title to such property, and as a foundation for its conclusion, the learned court passed upon the character and effect of the law in question in general. We may as well quote at considerable length from the opinion in this case, as we deem it conclusive as to the above question, and therefore as to the effect of the Day assignment on real property in this state, and some other questions discussed by the respondent: "The assignment under consideration was made June 3, 1898, and the law applicable thereto may be found in chapter 80 and chapter 80a, Samb. & B. Ann. St. So far as chapter 80 is concerned it only assumes to regulate and control the manner in which such assignment shall be made and executed. Chapter 80a, however, added some new features, which led this court to speak of our whole system relating to voluntary assignments as an insolvent law. Holton v. Burton, 78 Wis. 321, 47 N. W. 624.; Bank v. Schranck, 97 Wis. 250, 73 N. W. 31, 39 L. R. A. 569. In Binder v. McDonald, 106 Wis. 332, 82 N. W. 156, this court criticised these statements, and limited them to the additions made to the general assignment law by Acts 1889, c. 385, now included in chapter 80a. This court has never had occasion to examine and construe the purpose and force of those features of our assignment law which enable the debtor to obtain a discharge from his debts. A very similar system in Minnesota was considered in McClure v. Campbell, 71 Wis. 350, 37 N. W. 343, 5 Am. St. Rep. 220, and it was distinctly held that an assignment made in that state, pursuant thereto, had no extraterritorial effect. Similar statutes have been the subject of frequent discussion in other courts, and the almost uniform line of decisions is in accord with the conclusion stated. Many of the cases are cited and reviewed by the Supreme Court of the United States in the recent case of Trust Co. v. Dodd, 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835. In Barth v. Backus, 140 N. Y. 230, 35 N. E. 425, 23 L. R. A. 47, 37 Am. St. Rep. 545, and Townsend v. Coxe, 151 Ill. 62, 37 N. E. 689, the courts of last resort in New York and Illinois had occasion to consider the

law of this state, and the legal effect of an assignment thereunder; and both courts came to the conclusion that those portions of our law which enabled the assignor to obtain a discharge from his debts gave it the character of a bankrupt law, and that such an assignment was ineffectual to transfer title to property of the insolvent situate in those states. Of course we are not bound by those decisions; but, in so far as they rest upon valid reasons and sound conclusions, they are entitled to weight. Chapter 80, as already noted, only assumes to deal with the making and administration of common-law assignments. Prior to 1889 an insolvent debtor could only obtain a discharge from his debts by procedure under chapter 179, an act entirely independent of the assignment statutes. This chapter provided for a petition, a schedule of all creditors, and an inventory of property, and in a proper case an assignment was directed. Recognizing the futility of such a course by a debtor who had made a voluntary assignment, in 1889 the Legislature adopted the provisions which have been incorporated in chapter 80a. The form of procedure was based upon the assumption that the debtor had made a voluntary assignment. Among other features, it provided that such debtor might become discharged from his debts, as a part of the proceedings under the assignment, and that every creditor, residing within or without the state, who should accept a dividend out of the assigned estate, or participate in any way in the proceedings, should be bound by the order of discharge, subject to the right of appeal. If this coercive feature of the scheme had been contained in the original assignment executed by the debtor, it would have rendered the assignment void. It became legal only by force of the statute. Thus the way was opened to every debtor making an assignment, not only to distribute his property to his creditors, but to demand a discharge from his indebtedness as to every creditor who should come in or accept a dividend. It was, in legal effect, tacking a bankrupt law to the assignment law; and, inasmuch as the distribution of the estate depends not upon the will of the assignor, but upon the positive requirement of the lawmaking power, we can see no escape from the conclusion that in so far it becomes statutory, and not voluntary. It is only in the cases where the making of the transfer and the distribution of the assigned estate are the voluntary acts of the assignor that the law recognizes the extraterritorial effect of the deed of assignment.

When the state steps in and regulates the distribution of the assigned estate in accordance with conditions which only the sovereign can prescribe, and the conditions so prescribed are such as to bring into play the essential features of a bankrupt law, the operation of the assignment will be limited to the state where made. No question of comity arises, or at least that rule cannot be extended to cases of this kind. * * * The legal effect of the assignment being only to convey to the assignee the title to such assets as were within the state, the filing of a claim by the defendant only has the effect to recognize its validity to that extent. It creates no greater right in the assignee than was conveyed by his deed. We do not see how any question of estoppel can arise, unless it should arise over some question of administration of the estate actually assigned. Whether the court in which the proceedings are pending may deny the right of defendant, under the circumstances, to participate in dividends is a question not before us."

Many cases make a broad distinction between the effect of such an assignment upon real and personal property, but no such question is in the case at bar. It is sufficient to say that all such distinctions are exercised in favor of the assignee's title to personal property. The Supreme Court, in McClure v. Campbell, 71 Wis. 350, 37 N. W. 343, 5 Am. St. Rep. 220, construed a similar insolvency law of the state of Minnesota and its application to property in Wisconsin. It is argued that the Minnesota law differs essentially from the Wisconsin law. This is true in regard to many of its details, but it is not true as to the principle relied upon; the point being that both laws provide for a discharge of the debts of the insolvent. In the McClure case, in construing the Minnesota law, it was held that, the property being administered by and under the direction of the court of Minnesota, the assignment had no extraterritorial effect, and did not defeat an attachment levied upon property in the state of Wisconsin by a creditor of the assignor, that such assignment made in Minnesota under the insolvent law of the latter state did not affect the property of the assignor situate in Wisconsin, even though, in the sense that the debtor was not compelled to make the assignment, it was voluntary. The Wisconsin court in that case, referring to the construction given the Minnesota statute by the Supreme Court of Minnesota, says that they regard it as binding upon the Wisconsin court. In Townsend v. Coxe, supra, the Supreme Court of Illinois holds the Wisconsin law to be a bank-

ruptcy or insolvency law, and ineffective to pass title outside the state of Wisconsin. Many other authorities might be cited in harmony with the decision of the Wisconsin court, but we deem the decision of that court binding upon us as to the character of the Wisconsin proceeding, and we hold that the statute in question is a bankruptcy or insolvency law, and therefore transfers no title to real property situate in the state of North Dakota.

It is claimed by the respondent that the appellant's title, being derived from a quitclaim deed, is insufficient as the ground for maintaining an action to quiet title, and consequently is not adequate to support a counterclaim. There is no merit in this contention. The authorities cited are not in point, and, if they were, are contrary to the great weight of authority. The deed to the respondent grants, sells, remises, and releases unto the defendant; and, even if, according to the contention of the appellant, it is only a quitclaim deed, it as effectually passed all title as one containing full covenants. See 1 Am. & Eng. Enc. Law, 860, and cases cited.

One other point remains to be considered. Prior to the trial in the district court the parties entered into a stipulation of the facts, on which it was agreed the case should be submitted. This stipulation was suggested by the respondent, and it was consummated with great care by correspondence covering a period of several weeks. It was in writing, and signed by the respective parties. It begins in the following language: "It is stipulated and agreed by and between the plaintiff and the defendant, W. J. Hartzell, in the action above entitled, that the following facts shall constitute all of the facts in the action above entitled, and shall be evidence of the same, and may be read as evidence at the trial of said cause, subject to the stipulation herein contained relative to objections." After stating the facts agreed upon, the concluding paragraph is as follows: "That the facts herein stipulated shall be considered proven, and each fact so stipulated will be subject to all legal objections on the trial, except the manner of bringing said facts before the court, as the respective parties of this cause may deem advisable to interpose, and either party may make such objections and have the same incorporated into the record at the time of the trial, or such objections may be considered made and entered for all purposes without being formally noted in the record." This stipulation was dated January 6, 1906, but was not consummated until the 15th of that month. We infer that the trial occurred early in March, 1906.

The case was submitted upon the stipulation and the arguments of counsel. Subsequently, and about the 13th of March, 1906, the respondent gave notice of motion for an order permitting the presentation of further testimony in his behalf. This motion was submitted on affidavits on the 17th day of April, 1906, when the appellant objected to its consideration. The court overruled the objection and granted the motion. We shall not discuss the evidence submitted on the motion. It is sufficient to say that it disclosed no fraud or deceit on the part of appellant relative to the stipulation. The respondent did not ask to have the stipulation set aside, but that he be permitted to introduce additional evidence. The court granted the motion solely for the purpose of permitting the plaintiff to present evidence on three points, and it is urged by the appellant that this order was erroneous. In this we agree with the appellant. We do not hold that the solemn stipulation of facts' made by the parties may not, under some circumstances, in the exercise of a wise discretion, be vacated, and additional evidence be received. Such is not this case. Had the court seen fit to vacate the stipulation as to both parties, or to permit both parties to submit additional testimony, or even to have given the defendant the opportunity, through this order, to rebut new evidence offered by the plaintiff, a different principle would be involved and a different rule might apply. The order continued in force the stipulation in question as to the defendant. He was still bound by its terms, and was not permitted to submit rebutting or other evidence. It was a one-sided affair, and cannot be sustained in a court of equity. Authorities are not wanting to support this conclusion. Indeed some hold that a stipulation of facts, made as this one was made, is a contract, and can only be vacated upon grounds which would warrant setting aside other express contracts. We call attention to Bingham v. Supervisors Winona County, 6 Minn. 136 (Gil. 82), Gerdtzen v. Cockrell, 50 Minn. 546, 52 N. W. 930, Keys v. Warner, 45 Cal. 60, Welsh v. Noyes, 10 Colo. 133, 14 Pac. 317, Chapman v. Coats et al., 26 Iowa, 288, Ish v. Crane et al., 13 Ohio St. 574, Franklin v. Ins Co., 43 Mo. 491, McNeill v. Town of Andes (C. C.) 40 Fed. 45, and In the Matter of Smith, 9 Abb. N. C. (N. Y.) 452.

In the case of Welsh v. Noyes, supra, the trial court had stricken out a material portion of what was, in effect, a stipulation of facts, and the appellate court held that while the trial court may relieve the party from such stipulation by pursuing the right method, that

a portion of the stipulation could not be stricken out, and that the proper way to relieve the party from a stipulation inadvertently, or otherwise, made against his intentions was to cancel the whole stipulation, and that the course pursued was erroneous. In Gerdtzen v. Cockrell, supra, the Supreme Court of Minnesota held that the party could not on motion be relieved, in whole or in part, from a release which by the terms of a stipulation he had effected, leaving the other party still concluded and bound by it, and held that it could not be presumed that one party would have entered into such agreement unless the other party had also done so, and that the agreement, if it could be set aside at all, must be wholly set aside. These cases are not decided on facts precisely like those of the case at bar, but the principles involved, we think, are identical. This question might be entitled to more serious consideration, except for the fact that nearly all the evdence submitted under the order of the court by the respondent was unquestionably immaterial and irrelevant or incompetent.

The judgment of the district court is reversed, and it is directed to enter judgment quieting the title to the land described in the appellant, as against all claims of the respondent. All concur.